Filed 4/30/21  P. v. Machain CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALAN MACHAIN,<br><br>    Defendant and Appellant. | B302684<br><br>(Los Angeles County<br>Super. Ct. No. BA348847) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert J. Perry, Judge.  Affirmed.

Kelly C. Martin, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Zee Rodriguez, Supervising Deputy Attorney General, and Michael C. Keller, Deputy Attorney General, for Plaintiff and Respondent.

————————————

A jury convicted Alan Machain of murdering Cesar Valenzuela. Machain's defense was identity: he was not the murderer. The prosecution lacked evidence of motive, but attacked Machain's defense with four types of circumstantial evidence.

First was location. The murder scene was Machain's residence. Only Machain lived there. It was a residential building in Silver Lake that victim Valenzuela, a handyman, was renovating. Only two people had keys to the place: Valenzuela and Machain. With the owner's permission, Machain had been living in the building. In 2008, five days passed from the time Valenzuela's family reported him missing to the discovery of his corpse in the building. After the murder but before the corpse discovery, Machain unexpectedly moved out of the Silver Lake building and in with his parents briefly. Machain brought no belongings with him; he left his things at the Silver Lake building.

Second was flight. After police learned of the murder, Machain fled to Mexico for nine years. Machain disappeared after his brother said police wanted to speak with him. Machain remained abroad for nine years without seeing his brother. Machain was arrested in Mexico in 2017.

Third was Valenzuela's truck. Evidence showed Machain took the victim's truck shortly after his murder, drove it, and finally abandoned it near Machain's parents' home.

Fourth was gun evidence. This evidence is the focus of this appeal. The gun evidence also involved gang evidence, which Machain argues should not have been introduced at trial.

We describe this gun and gang evidence.

The police at the Silver Lake murder scene collected spent nine-millimeter casings they later connected with a pistol, which in turn they connected with an earlier tire shootout in Compton. The police did not think this earlier Compton shooting was gang related. So there are three locales: use of the pistol to kill Valenzuela in Silver Lake; use of the same pistol to shoot out car tires a month earlier in Compton; and police discovery of the pistol itself years later in Ontario. The prosecution linked these three scenes with Machain as follows.

The police analysis of the Silver Lake murder scene casings matched them with the pistol later found in Ontario. Through analysis of the marks on the casings, detectives were able to link this pistol, found in 2015 in Ontario, with the two shootings in 2008. One was Valenzuela's murder: spent casings at that scene matched the Ontario gun. Those casings also matched casings found at the Compton shooting.

Compton had two connections with Machain. First, Machain had lived near Compton in the past at his parents' house. Second, Compton is the stronghold for Machain's gang, which is called CV 70. This gang is the largest Hispanic gang in Compton. It also goes by Compton 70's and Compton Varrio Setentas. Setentas means "seventies" in Spanish.

About a month before Valenzuela's murder, someone used this pistol to shoot out car tires in CV 70 territory. That shooter left behind casings from the nine-millimeter gun, which matched the casings at Silver Lake and the gun from Ontario.

The prosecution argued both connections linked Machain to the gun, whether the tire shooting was gang related or not. Gang members can use gang weapons for purposes that are not gang related.

The evidence was that gang members pass guns around within the gang.

The prosecution used gang evidence to connect the murder weapon with Machain. Whether it was gang related or not, the tire shootout was in CV 70 territory, and two types of evidence showed Machain's affiliation with CV 70: Machain's tattoos and Machain's CV 70 graffiti on his personal property.

Machain's tattoos included "Compton" on his abdomen and "70" on his back. Machain also had "S" tattoos on his triceps, signifying allegiance to the Mexican Mafia.

Gang members commonly tag personal property, no matter who owns it. The graffiti evidence was of several types.

A TV/DVR player at the Silver Lake crime scene was inscribed with "Compton 70's." The prosecution urged the jury to conclude Machain had written this graffiti, because only Machain had been living and keeping personal property there.

Police found objects with graffiti inside Valenzuela's truck after Machain abandoned it, along with Machain's DNA and fingerprints. The graffitied objects included a CD case, CDs, and a shoe. The graffiti were gang symbols and Machain's own name.

We review for an abuse of discretion. Machain agrees. (*People v. Alvarez* (1996) 14 Cal.4th 155, 201.)

Machain protests the introduction of the gang evidence, but there was no abuse of discretion here.

The gun and gang evidence was relevant because it tended to show Machain had a connection to the murder weapon through his gang.

The trial court did not abuse its discretion under Evidence Code section 352. The court counteracted the potential for undue prejudice with a proper instruction:

4

"You may consider gang evidence only for the limited purpose of identity. [¶] You may not consider this evidence for any other purpose. You may not conclude from this evidence that the defendant is a person of bad character or that he has a disposition to commit crime."

Both the prosecutor and defense counsel stressed this instruction in closing argument. The prosecutor argued "this isn't a gang case. The evidence was introduced for the purpose of showing I.D." Machain's counsel agreed: "So the judge told you that you may not consider the gang evidence for any other purpose except for identity. You can't conclude from that evidence that he's somehow a bad person or he's somehow more likely to commit a crime than anyone else."

Beyond this instruction, the trial court was active, on its motion, in limiting trial time spent on gang evidence.

Machain says the gang evidence had scant probative value. The probative value was significant. Connecting the gun to Machain and his gang was one strand of a cord tying him to Valenzuela's murder. The more strands, the less likely each strand was mere coincidence. This gun connection, linked through gang evidence, was a meaningful addition to the prosecution's showing. We do not view it in isolation.

Machain particularly objects to introduction of the evidence of the tattoo of "70" on his back. "The [70] tattoo was irrelevant because [Machain] obtained it after his arrest, at least nine years after the events in this case. The tattoo proved only [Machain's] *current* depth of CV 70's association, not his earlier degree of affiliation." (Italics in original.) This argument overlooks the fact that later gang membership can corroborate earlier gang membership. This evidence was proper.

The trial court did not abuse its discretion and therefore did not violate Machain's constitutional rights.

**DISPOSITION**

The judgment is affirmed.


WILEY, J.


I concur:


GRIMES, Acting P. J.

**STRATTON. J., Concurring.**

I would hold that the gang evidence was improperly admitted, but that its admission was harmless, given the strength of the circumstantial evidence against appellant.

The gang evidence was improperly admitted because it was more prejudicial than probative. I cannot find any thread of logic that gives this evidence any probative value. The People argue the gang evidence was necessary to prove appellant was the shooter. The murder weapon was used 30 days before the murder in a victimless crime that was not deemed gang related by the investigating officer. Then it was used 30 days later to kill Valenzuela in a murder that was neither alleged nor shown to be gang related. Then it was found in Ontario ten years later.

I don't get the logical inferences. Is this the inferential sequence?

- Appellant was in a gang in Compton;
- Gangs move guns around;
- This gun was moved around (it was found in Ontario 10 years after the murder and then connected to a victimless non-gang related crime 10 years before in Compton, 60 miles away from Ontario and it was the one that was used to kill Valenzuela one month after the Compton shooting);
- Therefore, because appellant is in a gang and the gun used by the killer was moved around, he, as a gangster, must have been the one to shoot Valenzuela with this gun.

This is too attenuated to be probative of anything, let alone identity. The evidence simply prejudiced the jury against appellant because it labeled him a gang member in a prosecution for a crime that was not gang related.

1

Moreover, the People had ample evidence of identity.  In the victim's truck, parked near appellant's home after the murder, police found a container with appellant's name written on it.  That certainly had more value probative of identity than the tortured logic employed to get the fact of appellant's gang affiliation before the jury.

Nevertheless, recognizing there was amazingly persuasive circumstantial evidence proving appellant guilty of murder, I concur in the result.

STRATTON, J.